People v Ambrosio (2025 NY Slip Op 01133)

People v Ambrosio

2025 NY Slip Op 01133

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

CR-22-2243 CR-23-0971
[*1]The People of the State of New York, Respondent,
v
Jason J. Ambrosio, Appellant.

Calendar Date:January 14, 2025

Before:Aarons, J.P., Pritzker, Lynch, Ceresia and Powers, JJ.

Matthew C. Hug, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.

Ceresia, J.
Appeals (1) from a judgment of the County Court of Clinton County (Timothy Lawliss, J.), rendered November 3, 2021, upon a verdict convicting defendant of the crimes of driving while ability impaired by the combined influence of drugs and driving while ability impaired by drugs, and (2) from a judgment of said court, rendered November 2, 2022, which revoked defendant's probation and imposed a sentence of imprisonment.
Following a traffic stop, defendant was charged by indictment with two counts of driving while ability impaired by drugs — for buprenorphine and marihuana, respectively — and one count of driving while ability impaired by the combined influence of these two drugs.[FN1] Defendant proceeded to a jury trial and was acquitted of the count of driving while ability impaired by buprenorphine but convicted of the remaining two counts. He was given a split sentence consisting of 60 days in jail and five years of probation on each count, to run concurrently. After testing positive for cocaine on several occasions, defendant was charged with violating the terms of his probation. Upon defendant's admission to such violation, his probation was revoked and he was resentenced to a prison term of 15 to 45 months. Defendant appeals from the judgment of conviction as well as the judgment resentencing him to a term of imprisonment.[FN2]
We turn first to defendant's contention that the convictions are not supported by legally sufficient evidence and are against the weight of the evidence due to a lack of proof of impairment. Although defendant moved for dismissal on legal insufficiency grounds at the conclusion of the People's case, he failed to preserve that argument by renewing the motion at the close of all the proof (see People v Tenace, 229 AD3d 908, 909 [3d Dept 2024]; People v Decker, 218 AD3d 1026, 1029 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]). However, when considering defendant's weight of the evidence challenge, we assess the sufficiency of the proof as to each element of the crimes of conviction (see People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Lozano, 203 AD3d 1231, 1232 [3d Dept 2022]).
According to the trial evidence, on the date in question, a state trooper pulled defendant over for having an excessively loud muffler. The trooper, who had received advanced training in drug recognition, smelled fresh marihuana in defendant's vehicle and observed that defendant was speaking in a low raspy voice and had constricted pupils and droopy eyelids, all signs of drug impairment. The trooper ordered defendant out of the vehicle and searched his person, finding a vape pen containing a cartridge that smelled of marihuana and was labeled "THC," the active ingredient in marihuana. The trooper also searched the vehicle and found a second, similar cartridge along with loose strips of suboxone, a medication that contains buprenorphine, a narcotic analgesic. Defendant then failed some field sobriety tests, after [*2]which he was placed under arrest. Following a blood draw at a local hospital, defendant tested positive for the active ingredients and metabolites of both buprenorphine and marihuana. While at the hospital, defendant was observed with low blood pressure and low body temperature, indicators of impairment by a narcotic analgesic.
Defendant testified at trial and admitted that he had consumed marihuana the night before and suboxone that morning, but denied that either impaired his ability to drive. He further asserted that he had performed the field sobriety tests nearly perfectly, that his voice was naturally low and raspy and that his pupils were dilated by the sun. Defendant also testified that he had previously received tickets from this particular trooper.
Had the jury credited defendant's telling of the events, an acquittal would not have been unreasonable. Nevertheless, viewing the proof concerning defendant's impairment in a neutral light and deferring to the credibility findings made by the jury, we find that the verdict is supported by the weight of the evidence (see People v Perez, 213 AD3d 984, 987 [3d Dept 2023], lv denied 39 NY3d 1156 [2023]; People v Fragassi, 178 AD3d 1153, 1155 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]).
Next, defendant claims that his right to a public trial was violated because County Court closed the courtroom amidst the COVID-19 pandemic. Defendant failed to preserve this issue for review by way of a timely objection (see People v Alvarez, 20 NY3d 75, 81 [2012], cert denied 569 US 947 [2013]; People v Smith, 157 AD3d 978, 982 [3d Dept 2018], lv denied 31 NY3d 1087 [2018]), and we reject it in any event. While a criminal defendant has a fundamental right to a public trial, this right may give way in rare circumstances to other overriding interests (see Waller v Georgia, 467 US 39, 45 [1984]; People v Ramos, 90 NY2d 490, 497 [1997], cert denied 522 US 1002 [1997]). Here, the protection of the public during a global pandemic constituted such an overriding interest (see People v Cruz, 77 Misc 3d 134[A], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2022], lv denied 39 NY3d 1110 [2023]). In the face of COVID-19 protocols requiring reductions in courtroom capacity, the trial was made available for public viewing via Microsoft Teams and the court clerk's office verified that each member of the viewing public, including members of defendant's family, could see and hear the trial proceedings. In our view, the courtroom closure was not overbroad, nor did the court overlook some other reasonable alternative to livestreaming the proceedings (see People v Ramos, 90 NY2d at 497; see also People v Ramirez, 41 NY3d 406, 413 [2024], cert denied ___ US ___, 144 S Ct 2698 [2024]).
Defendant also asserts that the verdict was repugnant because the jury found him guilty of driving while ability impaired by the combination of buprenorphine and marihuana, but not guilty of impairment by buprenorphine alone. We disagree. A verdict [*3]is repugnant "where the defendant is convicted of an offense containing an essential element that the jury has found the defendant did not commit" (People v Trappier, 87 NY2d 55, 58 [1995]; accord People v Strickland, 78 AD3d 1210, 1211 [3d Dept 2010]). "Repugnancy is not evaluated based upon the entire record, or even the language used in the indictment; the record should be reviewed only as to the jury charge" (People v Strickland, 78 AD3d at 1211 [internal quotation marks and citations omitted]; see People v Brown, 243 AD2d 749, 750 [3d Dept 1997]). Here, pursuant to the jury instructions, the jury could have concluded that defendant was not impaired by buprenorphine alone but that the combination of buprenorphine and marihuana rose to the level of impairment. Therefore, the verdict was not repugnant (see People v Van Alphen, 167 AD3d 1076, 1079 [3d Dept 2018], lv denied 32 NY3d 1210 [2019]; People v Keener, 152 AD3d 1073, 1075 [3d Dept 2017]).
Moving on, defendant argues that he was deprived of the effective assistance of counsel because counsel should have requested a different jury instruction concerning the definition of impairment. More specifically, relying upon People v Caden N. (189 AD3d 84 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]), defendant asserts that he was entitled to an instruction in accordance with the heightened standard of intoxication. We are unpersuaded.
A claim of ineffectiveness will fail "when the success of the argument the defendant claims should have been made by counsel depended on the resolution of novel questions, or when, at the time of the defendant's trial, there was no clear appellate authority supporting the argument" (People v Hayward, ___ NY3d ___, ___, 2024 NY Slip Op 05243, *1 [Oct. 24, 2024] [internal quotation marks and citations omitted]). In other words, counsel will not be found to have been ineffective when the issue in question is "not so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it" (People v Saenger, 39 NY3d 433, 442 [2023] [internal quotation marks and citation omitted]; see People v McGee, 20 NY3d 513, 518 [2013]).
At the time of defendant's trial, there was no appellate authority which warranted a jury instruction concerning the heightened intoxication standard relative to the crimes that were pending against defendant. In Caden N., this Court, by its own express language, limited its holding to the crime of vehicular manslaughter, which of course is not present here. That is, this Court was careful to state that it was defining impairment "in the context of assessing whether a person has committed the crime of vehicular manslaughter in the second degree" (People v Caden N., 189 AD3d at 90). In the event that this Court had also wished to apply the new definition of impairment to the underlying crimes of driving while ability impaired by drugs or by a combination thereof, it surely would have explicitly stated as much.
Further indicative of [*4]the inapplicability of Caden N. to this case is the fact that the unique rationale relied upon therein is peculiar to the charge of vehicular manslaughter. Said another way, had this Court been called upon in Caden N. to consider only the separate charges of driving while intoxicated, driving while ability impaired by alcohol and driving while ability impaired by drugs, as opposed to considering the interplay of those charges within the specific context of the vehicular manslaughter statute, it certainly stands to reason that this Court would not have engaged in the analysis that it undertook, as it has no relevance to those charges independently. Moreover, the CJI2d Committee's reaction to the ruling in Caden N. is illustrative. Upon amending the Criminal Jury Instructions in December 2021 to reflect the Caden N. decision, the CJI2d Committee indicated that the Caden N. definition of impairment is to be given in connection with the charge of vehicular manslaughter, but need not be given relative to the charges of driving while ability impaired by drugs or by a combination thereof (see CJI2d[NY] Vehicle & Traffic Law §§ 1192 [2-a] [b]; 1192 [4]; 1192 [4-a] [as rev Dec. 2021], https://nycourts.gov/judges/cji/3-VTL/ocind.shtml [last accessed Feb. 13, 2025]). Given the foregoing, Caden N. does not furnish the requisite clear legal authority urged by defendant.
In the absence of any such authority, defense counsel properly acquiesced to the jury being charged in accordance with the definition of impairment that was provided in the Criminal Jury Instructions as of that time. Thus, under these circumstances, it cannot be said that any reasonable defense counsel would have requested the intoxication instruction in place of the impairment instruction, and counsel was not ineffective for failing to do so.
As to our dissenting colleague's view that interest of justice jurisdiction should be exercised to grant defendant a new trial, we disagree. For the reasons just articulated, County Court gave the jury the correct instruction regarding the definition of impairment. It would be anything but just to find fault with the court for adhering to the definition set forth in the Criminal Jury Instructions when there was no clear appellate authority requiring otherwise.
Turning to the balance of defendant's claims of ineffectiveness, defendant contends that counsel should have filed an omnibus motion challenging the basis for the traffic stop and ultimate arrest. Recognizing that an officer is justified in initiating a traffic stop and ordering the driver out of the vehicle based upon an observed motor vehicle equipment violation (see People v Garcia, 20 NY3d 317, 321 [2012]; People v Green, 173 AD3d 1690, 1691 [4th Dept 2019]), including for an excessively loud muffler (see Vehicle and Traffic Law § 375 [31]; People v Issac, 107 AD3d 1055, 1057 [3d Dept 2013]), and noting further the trooper's observation of signs that defendant was impaired, defense counsel cannot [*5]be faulted for failing to make a motion that would have had little to no chance of success (see People v Kendricks, 226 AD3d 1150, 1158 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]). As for counsel's remaining perceived shortcomings, we are unmoved and instead find that, considering the record as a whole and counsel's performance in its totality, defendant received meaningful representation (see People v Pica-Torres, 230 AD3d 855, 862 [3d Dept 2024], lv denied 42 NY3d 1054 [2024]; People v Miley, 229 AD3d 969, 974 [3d Dept 2024], lv denied 42 NY3d 971 [2024]).
Aarons, J.P., Pritzker and Powers, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent, in part. In my view, defense counsel's failure to request an appropriate jury instruction defining "impairment" for purposes of Vehicle and Traffic Law § 1192 (4) deprived defendant of a fair trial. In People v Caden N. (189 AD3d 84 [3d Dept 2020], lv denied 36 NY3d 1050 [2021]), this Court was confronted with determining the degree of impairment necessary to convict a motorist of vehicular manslaughter in the second degree (see Penal Law § 125.12 [1]) where the motorist was "impaired by the use of a drug" in violation of Vehicle and Traffic Law § 1192 (4). In doing so, we recognized that the statutory scheme of Vehicle and Traffic Law § 1192 is premised on the concept that "the greater a driver's ability to function has been compromised the greater the penalty imposed" (People v Caden N., 189 AD3d at 90; see People v Litto, 8 NY3d 692, 705 [2007]). That guiding principle is reflected in the distinction between driving while impaired by alcohol, a violation under Vehicle and Traffic Law §§ 1192 (1) and 1193 (1) (a), and driving while intoxicated, a misdemeanor under Vehicle and Traffic Law § 1192 (3) and 1193 (1) (b). In People v Cruz (48 NY2d 419 [1979], appeal dismissed 446 US 901 [1980]), the Court of Appeals explained that the more serious offense of driving while intoxicated "involves a greater degree of impairment" (id. at 427). For that reason, in Caden N., we declined to apply the lesser "impairment" standard governing a violation of Vehicle and Traffic Law § 1192 (1); instead, we imposed the heightened standard necessary to sustain a driving while intoxicated conviction to sustain a conviction for driving while impaired by drugs under Vehicle and Traffic Law § 1192 (4) — for both constitute misdemeanors (People v Caden N., 189 AD3d at 90; see Vehicle and Traffic Law § 1193 [1] [b]).
Under the lesser standard, the question of impairment focuses on "whether, by voluntarily consuming alcohol, [the] defendant has actually impaired, to any extent, the physical and mental abilities which he [or she] is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d at 427 [emphasis added]). By comparison, under the heightened standard the question is whether "the driver has voluntarily consumed alcohol to the extent that he [or she] is incapable [*6]of employing the physical and mental abilities which he [or she] is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (id. at 428 [emphasis added]). The evidentiary distinction between these two standards is significant. While Caden N. involved a conviction for vehicular manslaughter under Penal Law § 125.12 (1), the governing principles outlined above necessarily apply to a charge under Vehicle and Traffic Law § 1192 (4). To that end, we specifically stated in Caden N. that "[s]uch a distinction between impairment by alcohol and impairment by a drug (or a combination of both) can only be deemed consistent with the legislative scheme if the same standard is applied to each misdemeanor category included in the vehicular manslaughter statute" (84 AD3d at 90).
Here, during the charge conference held on September 23, 2021, defendant's counsel requested the "standard" instruction for the Vehicle and Traffic Law § 1192 (4) charge. At that time, the New York Criminal Jury Instructions utilized the lesser "to any extent" standard applicable to a violation of Vehicle and Traffic Law § 1192 (1). The record reveals no discussion between counsel and the court about Caden N., which had been decided by our Court on October 22, 2020, with leave to appeal to the Court of Appeals denied on January 28, 2021. The jury proceeded to convict defendant utilizing that lesser standard.
Given this discrepancy, the question distills to whether defendant was deprived of his constitutional right to the effective assistance of counsel and a fair trial in view of the erroneous charge as to "impairment" under Vehicle and Traffic Law § 1192 (4). In People v Hayward (___ NY3d ___, 2024 NY Slip Op 05243, *1 [Oct. 24, 2024]), the Court of Appeals recently reiterated that to establish such ineffectiveness "defense counsel's omission 'must typically involve an issue that is so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could not have been grounded in a legitimate trial strategy' " (id. at ___, 2024 NY Slip Op 05243, *1, quoting People v McGee, 20 NY3d 513, 518 [2013]; see People v Watkins, 42 NY3d 635, 640 [2024], cert denied ___ US ___, 145 S Ct 459 [Nov. 4, 2024]). Where the issue involves resolution of a novel question or where there is "no clear appellate authority," counsel would not be ineffective for omitting the argument (People v Hayward, ___ NY3dat ___,2024NY Slip Op 05243,*1).
Pertinent here, Caden N. provided appellate authority for defense counsel to seek a charge utilizing the heightened "impairment" standard. In that regard, counsel's failure to adequately research the governing case law illustrates unreasonable performance (see People v De Bellis, 40 NY3d 431, 436 [2023]). At the same time, it is important to recognize that the New York Criminal Jury Instruction for Vehicle and Traffic Law § 1192 (4) was not revised [*7]to account for Caden N. until December 2021 — three months after the subject trial (see CJI2d[NY] Vehicle and Traffic Law § 1192 [4], https://www.nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%284%29.pdf [last accessed Feb. 21, 2025]). In the accompanying "Explanatory Note on Definition of Impairment" it was observed that "Caden N. did not explicitly discuss whether the standard for impairment for purposes of a prosecution for [vehicular] manslaughter in the second degree was also the standard to be applied in a prosecution for only Vehicle & Traffic Law § 1192 (4), nor did Caden N. suggest that its definition of 'impairment' for purposes of vehicular manslaughter was . . . different than that for the same term in a prosecution of Vehicle & Traffic Law § 1192 (4)" (CJI2d[NY] Vehicle and Traffic Law § 1192 [4], Explanatory Note, https://www.nycourts.gov/judges/cji/3-VTL/VTL_1192/1192%284%29.pdf [last accessed Feb. 21, 2025]). Not to be overlooked is the fact that in December 2024, the Fourth Department declined to follow Caden N. (see People v Dondorfer, ___ AD3d ___, ___, 225 NYS3d 494, 502-504 [4th Dept 2024]).
Given these circumstances, it is difficult to characterize Caden N. as so clear-cut that counsel's failure to request a charge premised on Caden N. was constitutionally ineffective (compare People v De Bellis, 40 NY3d at 433). Even so, this court has broad authority to "consider and determine any question of law or issue of fact involving error or defect . . . which may have adversely affected the appellant" (CPL 470.15 [1]). In an instance, as here, where defendant has failed to preserve an objection, this Court has the discretion in the interest of justice to reverse a conviction where an error of law deprived the defendant of a fair trial (see CPL 470.15 [6] [a]). In my view, County Court's failure to charge the jury on the heightened standard for impairment that applies to Vehicle and Traffic Law § 1192 (4) deprived defendant of a fair trial. As such, the conviction should be vacated and the matter remitted for a new trial utilizing the appropriate standard.
ORDERED that the judgments are affirmed.

Footnotes

Footnote 1: Each count was charged as a class E felony based upon defendant's previous conviction of driving while ability impaired by drugs within the preceding 10 years (see Vehicle and Traffic Law § 1193 [1] [c] [i] [A]).

Footnote 2: Defendant advances no argument on appeal in connection with the violation of probation and resentencing. Therefore, his appeal from the judgment revoking his probation and imposing a sentence of imprisonment has been abandoned (see People v Setterlund, 137 AD3d 1420, 1421 [3d Dept 2016]).